UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LARRY GREEN,                                          Case No. 1:09-cv-360

        Plaintiff,                                   Weber, J.
                                                      Bowman, M.J.
v.

SCHAEFFER'S INVESTMENT
RESEARCH, INC.,

        Defendant.


**REPORT AND RECOMMENDATION**


Plaintiff Larry Green ("Green") filed a complaint alleging that his former employer, Defendant Schaeffer's Investment Research, Inc. ("SIR"), unlawfully discriminated against him on the basis of his age. This matter is now before the Court on Defendant's motion for summary judgment. (Doc. 38). Plaintiff filed a memorandum in opposition (Doc. 40), to which Defendant filed a reply. (Doc. 44). Defendant's motion for summary judgment has been referred to the undersigned for initial consideration and a report and recommendation. 28 U.S.C. § 636(b)(1)(B). (Doc. 25). For the reasons set forth herein, I now recommend that the Defendant's motion for summary judgment be GRANTED.

**I. Background**

Defendant SIR is a research investment company that publishes educational information in order to assist its customers in their options trading. (Doc. 45 ¶ 1). In the course of its business, SIR operates a database of subscribers and prospective subscribers. (Doc. 45 ¶ 2). The database is unique to SIR and includes the subscriber's

1

or potential subscriber's name, contact information, and purchasing information. (Doc. 45 ¶ 3).

Plaintiff Green began employment with SIR on October 31, 2006, at a time when he was fifty-two years of age. (Doc. 45 ¶¶ 8, 10). Before working with SIR, Green was employed with Fidelity Investments where he was a top-performing investment representative until he was terminated for cause by that company. (Doc. 45 ¶ 5). Plaintiff's role at SIR was to sell investment education packages to customers for their use in trading options. (Doc. 45 ¶ 8). Plaintiff sold these investment education packages by studying the prospective customers' investment strategies and informing them of the packages designed by SIR that could assist with their trading activities. (Doc. 45 ¶ 9).

At the time Plaintiff was hired, he signed two agreements as a condition of his employment: SIR's Non-Disclosure Agreement ("Non-Disclosure Agreement"), and the Email and Internet Policy ("Email Policy"). (Doc. 45 ¶ 11, 14). The Non-Disclosure Agreement stated:

> Divulging to anyone any other information about [SIR] which [SIR] has designated as being confidential, proprietary, or a trade secret is prohibited without the advance express permission of an officer of the Company . . . [V]iolation of any of the above conditions shall be considered a breach of contract, may result in [his] dismissal from employment and shall subject [him] to liability for damages that may result from [his] actions.

(Doc. 33-2 at 23).

The Email Policy further provided:

> E-mail is not to be used to disclose trade secrets, Company or subscriber data of any kind, or any other confidential information . . . All e-mail,

internet records, and computer-generated documents are Company property and are subject to review . . . Misuse and abuse of our system or violations of our policy will be subject to disciplinary measures up to and including termination, and/or legal actions based on the severity of the violation.

(Doc. 33-2 at 24-25).

Shortly after Plaintiff was hired, SIR fired another employee, Chris Johnson, for misappropriating confidential information; Mr. Johnson allegedly intended to use the information in his competing business. Although Plaintiff's knowledge of the relevant details is disputed, Plaintiff admits to having been aware that SIR ultimately filed suit in state court against its former employee for violating SIR's Non-Disclosure Agreement and Email Policy. (Doc. 45 ¶ 15). The *Johnson* litigation was resolved through settlement on June 23, 2008.

In June of 2008, SIR reorganized and downsized, terminating six sales associates, five of whom were over the age of 40. Near in time to those terminations, in March of 2008 and on June 2, 2008, SIR hired two new employees (ages 25 and 30). After the June 2008 terminations, on July 7, 2008, SIR hired Alice Bertram, age 24. On August 8, 2008, SIR hired Evan Mulch, age 24, and Nicole McClure, age 29.

During its period of reorganization, SIR divided its sales department into two teams: the Alert Team and the Conversion Team. At that time, Plaintiff was transferred to the Conversion Team where his new duties included converting leads into subscribers of SIR educational materials. (Doc. 40 at 5). As a member of the Conversion Team, Plaintiff was supervised by Jason Kuykendall. Kuykendall was promoted during the reorganization, previously having been Plaintiff's peer. Plaintiff

was the highest producing representative on the Conversion Team for the month of July 2008, one month before he was fired. (Doc. 33-2 at 84).

On August 13, 2008, Kuykendall was training new employees. (Doc. 38 at 8). Pursuant to this task, Kuykendall and the new employees were listening to sales representatives' phone calls. (*Id.*) Kuykendall noticed that although Plaintiff's phone was in use, his line had a busy signal for an extended period of time. (*Id.*) At that same time, Kuykendall also noticed Plaintiff's computer screen was set to his email and not to the SIR system used to input customer contact. (*Id.*). Kuykendall believed the situation to be unusual, and asked the IT department to send Plaintiff's emails to him. (Doc. 34, Kuykendall Depo. at 30:20-35:24).

Upon examination of Plaintiff's emails, Kuykendall discovered that Plaintiff had sent several e-mails to Plaintiff's personal email address, as well as confidential information to an outside email address. (Doc. 45 at 5). Specifically, on March 20, 2008 and April 4, 2008, Plaintiff sent SIR customer Julius Adams's email address and phone number to his personal address.[1] (Doc. 45 ¶ 22). At the same time, Plaintiff forwarded the phone number, email address, and birth date of SIR customer Tim Blodgett to his personal email address. (Doc. 45 ¶ 23). On April 17, 2008, Plaintiff forwarded SIR customer database account information concerning SIR customer Rob Hillman to Plaintiff's personal email address. (Doc. 45 ¶ 25). Plaintiff testified that each piece of information was transmitted to Plaintiff's personal email account with the customer's permission.

[1] Adams is referred to, at various times, as both a current customer and as a former customer. It is unnecessary to determine his precise status to resolve the issues presented in the pending motion.

In addition to forwarding the referenced customer information, Plaintiff also emailed to himself SIR progress reports, consultant activity reports, and sales commission reports. (Doc. 45 ¶ 29). The latter information was transferred from Plaintiff's work email address to his personal address on at least five occasions: March 12, April 1, April 2, April 4, and April 22 of 2008. (*Id*.).

The last information that Plaintiff disseminated was lists of stock rankings from a company named "Zacks." (Doc. 45 ¶ 30). On August 6, August 11, and August 12 of 2008, Plaintiff received Zacks reports and "Sales Commentaries" from SIR colleague Chris Prybal, and forwarded them via email to customer Julius Adams. (Doc. 45 ¶¶ 30, 32, 33). Although Prybal, a member of the Quantitative Analysis department, was aware that the Zacks information was confidential, he did not convey that fact to Plaintiff, who testified that he was unaware of the confidential nature of the Zacks listings.

After reviewing Plaintiff's ingoing and outgoing emails, Kuykendall reported his findings to Senior Vice President of SIR, Denise Wilson. (Doc. 45 ¶41). Wilson made the decision to terminate Plaintiff the same day, on August 13, 2008. (Doc. 45 ¶ 44). SIR owner, Bernie Schaeffer, approved of Wilson's decision. (*Id*.). The basis for termination was Plaintiff's violation of the Non-Disclosure Agreement and the Email Policy. When Wilson informed Plaintiff of his termination, she cited those violations. (Doc. 45 ¶ 45). However, Plaintiff contends that Wilson refused to provide specific examples, or to discuss the details of the alleged violations with him at the time of termination. (Doc. 40 at 13-14).

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and has exhausted his administrative remedies (Doc. 1 at 1). The EEOC mailed Plaintiff a "right to sue" notice on April 1, 2009. On May 20, 2009, Plaintiff filed this lawsuit. Discovery was completed before Defendant filed the instant motion for summary judgment.

## II. Analysis

### A. Summary Judgment Standard of Review

In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (additional citation and internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts

demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992)* (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support her claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

**B. Grounds for Defendant's Motion**

Plaintiff's complaint alleges age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621. (Doc. 1 at 1).

Defendant argues Plaintiff cannot establish a prima facie case of age discrimination. Defendant further argues Plaintiff was terminated for a non-discriminatory reason, based upon his violations of the Non-Disclosure Agreement and Email Policy.

### 1. Applicable Standards

The ADEA makes it unlawful for an employer to discharge an individual or to otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a). A plaintiff may establish a discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id.*

In an age discrimination case, whether a plaintiff seeks to prove his case by direct or circumstantial evidence, he has the burden of persuasion to demonstrate "that age was the 'but-for' cause of his employer's adverse action." *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Gross v. FBL Fin. Services, Inc*., 129 S.Ct. 2343, 2351 n.4 (2009)). Where a plaintiff seeks to establish his age discrimination claim by circumstantial evidence in the Sixth Circuit, the claim may be analyzed under the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792,

802-804 (1973);[2] *see also Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 n.2 (6th Cir. 2010) (citing *Geiger*, 579 F.3d at 622).

In this case, Plaintiff has no direct evidence of age discrimination. A plaintiff who lacks direct evidence of discrimination may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost; and 4) he was replaced by an individual outside the protected class. *See Mitchell v. Toledo Hosp.*, 964 F.2d at 582. Alternatively, Plaintiff may establish the fourth element by showing that he was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002). In an age-discrimination case, the fourth prong requires replacement by a "substantially" or "significantly" younger person, which may include an individual within the protected class. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-313 (1996); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). The Sixth Circuit has held that a difference of six years or less between an employee and a replacement employee is not considered "significant." *Grosjean,* 349 F.3d at 340.

Summary judgment is appropriate if a plaintiff does not establish a prima facie case. Even if the plaintiff establishes a prima facie case, the employer can still win judgment by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its

---

[2] In *Gross v. FBL Financial Services, Inc*., the Supreme Court emphasized that the burden of persuasion remains on ADEA plaintiffs to demonstrate "that age was the 'but-for' cause of their employer's adverse action." --- U.S. ----, 129 S.Ct. 2343 (2009). *Gross* rejected the use of the burden-shifting framework for claims based on direct evidence of discrimination and declined to decide whether the *McDonnell Douglas* test applies to ADEA claims. *Id*. at 2349 n. 2. However, in the Sixth Circuit, the *McDonnell Douglas* framework continues to be applied in analyzing circumstantial evidence of ADEA claims. *Geiger v. Tower Auto*., 579 F.3d 614, 622 (6th Cir. 2009).

burden of showing that the termination was based upon a non-discriminatory reason, the employer will be entitled to judgment unless the plaintiff shows that the reason offered by the employer was not its true reason, but was instead a pretext for discrimination. *Id*. at 804; *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1395 (6th Cir. 1993). "The ultimate burden of proving the defendant's intent to discriminate remains with the plaintiff at all times." *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707 (6th Cir. 2006), (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993)).

### 2. Plaintiff's Prima Facie Case of Discrimination

It is undisputed, for purposes of the pending motion, that Plaintiff has satisfied the first three elements of his prima facie claim. (Doc. 38 at 3)("SIR assumes that Green can satisfy the first three elements of the prima facie case.") Defendant argues, however, that Plaintiff cannot establish the fourth element of his age discrimination claim because he cannot show either: (1) that he was replaced by a younger employee; or alternatively, (2) that a substantially younger employee was punished less severely for engaging in the same conduct.

### a. Inadequate Evidence of Replacement

Plaintiff argues that he has presented evidence such that a jury "could find" that Plaintiff was replaced by a younger employee, "since he was in the process of training new employees at the time of his termination." (Doc. 40 at 19). Specifically, Plaintiff argues that two employees were hired on August 8, 2008 "to perform the same job [Plaintiff] held," less than a week before Plaintiff's termination on August 13, 2008. Plaintiff argues that a reasonable inference can be drawn that Defendant had a policy of

targeting older employees for elimination, because in June of 2008, Defendant reorganized and in so doing, terminated older sales associates while retaining two recently hired younger employees (ages 25 and 30). Within two months following that restructuring event, Defendant hired three new sales associates under the age of thirty. Plaintiff relies upon *LaGrant v. Gulf & Western Mfg. Co., Inc.,* 748 F.2d 1087, 1091 (6th Cir. 1984); *see also MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054 (8th Cir. 1988) to argue that statistical evidence both shortly before and shortly after the Defendant's June 2008 restructuring period shows that Defendant deliberately terminated older employees in order to hire or retain younger employees.

However, unlike the other older employees he points to, Plaintiff was not terminated during the restructuring period in June of 2008. Instead, Plaintiff was terminated for cause on August 13, 2008. Plaintiff testified that he inferred that he was being replaced by the recently hired younger employees because, after his termination, Defendant "had somewhere for them to sit," and because Defendant "[o]nly had a certain number of seats in there unless they were going to double up." (Doc. 33, Green Depo at 64:21-65:11).

In contrast to Plaintiff's more speculative testimony, Kuykendall, Plaintiff's direct supervisor, testified that Plaintiff was not replaced by any employee at all, much less by one of the previously hired employees. (Doc. 34 at 49:12-22). Kuykendall also testified that the June 2008 layoffs and new hires were not a one-to-one correlation, and were unrelated events. (*Id.*).

Plaintiff's theory, drawn on inference alone and supported by extremely limited statistical analysis,[3] is insufficient to overcome Defendant's fact-based argument that no younger workers were hired to replace Plaintiff after his termination. *See, e.g., Grosjean v. First Energy Corp.,* 349 F.3d at 335 (affirming summary judgment where plaintiff failed to show that he was replaced by younger worker); *Locke v. Commercial Union Ins. Co.*, 676 F.2d 205, 206 (6th Cir. 1982)(affirming summary judgment where plaintiff "offered no evidentiary support for conclusion that age was the cause of his discharge").

The Court declines to adopt Plaintiff's inferential reasoning that Defendant generally disfavored older employees. Statistical evidence concerning whether an employer disfavored older employees clearly is relevant to a prima facie case where a plaintiff's termination is based upon a company-wide layoff or reduction in force ("RIF"). In fact, the *LaGrant* and *MacDissi* cases on which Plaintiff relies present precisely that type of claim. Statistical evidence may also be used in support of a plaintiff's proof on the issue of pretext, in some cases. However, Plaintiff cites no case - and this Court has discovered none- in which a court has permitted a plaintiff to use this type of statistical analysis to show that he was "replaced" by a younger employee in a case where the plaintiff was fired "for cause," and not during the period of restructuring.

---

[3] Plaintiff's methodology and explanatory comments are neither clearly articulated nor persuasive. Plaintiff attempts to show that Defendant terminated older employees at a disproportionately high rate based upon a relatively small sample size and/or often incomplete data. For example, Plaintiff complains that "between January 1, 2008 and July 1, 2009, [Defendant] did not fire a single sales employee under the age of 40 *for misconduct or performance problems.*" (Doc. 40 at 21). However, Plaintiff declines to state how many "sales employees" over the age of 40 were fired for cause, or whether any sales employees under the age of 40 were fired for other reasons. *See Allen v. Highlands Hosp. Corp.,*545 F.3d 387, 405 (6th Cir. 2008)(evidence that Defendant terminated disproportionately higher percentage of older workers not statistically significant in view of sample size).

Here, all of the referenced younger employees were hired *prior to* Plaintiff's termination; none were hired *after* Plaintiff's termination. Additionally, the date on which Defendant initiated its investigation and discovered evidence of Plaintiff's violations of company policies occurred *after* the younger employees were hired. Perhaps, *if* there were evidentiary support, a plaintiff could support the "replacement" element of his age discrimination claim based upon a theory that his employer carried out a premeditated plan to hire a replacement (younger) worker just before firing him for cause. On the record presented, however, Plaintiff's theory is insufficient under existing Sixth Circuit case law to show that he was replaced by a younger worker. *Accord*, *Green v. Fidelity Investments*, 1:07-cv-109-MRB, 2009 WL 366607 (rejecting same plaintiff's "flexible" approach to *McDonnell Douglas* test on facts presented), *aff'd* 374 Fed. Appx. 573 (6th Cir. March 15, 2010), *cert. denied*, 131 S. Ct. 598 (2010).

**b.  Insufficient Evidence of a Similarly Situated Employee**

Having failed to show that he was replaced by a younger worker, Plaintiff can satisfy the fourth prong of his claim only by showing that he was treated less favorably than a similarly situated younger employee. A similarly situated employee has been defined as someone whose employment situation is "nearly identical" to the plaintiff's situation in "all relevant aspects." *Pierce v. Commonwealth Life Insurance Co.,* 40 F.3d 796, 802 (6th Cir. 1994). Of course, a "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" *Ercegovich v. Goodyear*, 154 F.3d 344, 352 (6th Cir. 1998). Rather, courts require the plaintiff to demonstrate only that the plaintiff and the

other employee are similar in the necessary, relevant respects.  *See id.,* 154 F.3d at 353. Requiring anything more than this "would undermine the remedial purpose of the anti-discrimination statutes." *Id*.  Once a similarly situated employee is identified, the fourth element is met if the employee can demonstrate that the similarly situated employee was treated more favorably. *See Treadwell v. American Airlines, Inc.*, 716 F. Supp.2d 721, 732 (W.D. Tenn. 2010).

The demarcation between similar and dissimilar employees is mostly fact-based and is determined on a case-by-case basis. *See Ercegovich,* 154 F.3d at 352 ("Courts . . . should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee.")  In the disciplinary context in particular, the Sixth Circuit has identified a list of relevant factors to be considered when determining whether the plaintiff and a fellow employee are similarly-situated.

> [T]o be deemed 'similarly-situated' in the disciplinary context, 'the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'

*Id.*, 154 F.3d at 352, quoting *Mitchell*, 964 F.2d at 583.  This list is not exhaustive; plaintiffs are not required to show exacting similarity, and courts are encouraged to look beyond the provided factors and analyze the case at hand as they see fit.  *Id.,* 154 F.3d at 352.  Nonetheless, in general, evidence of the Plaintiff's similarity to his younger

colleague must be specific and "nearly identical." *Parries v. Makino, Inc.*, 148 Fed. Appx. 291, 297 (6th Cir. 2005); *Pierce*, 40 F.3d at 802.

Where courts have found substantial similarity, typically one or more prominent factors strongly support that conclusion. In *Ercegovich*, for example, the plaintiff and two younger employees occupied "related human resources positions that were all eliminated pursuant to a general reorganization of the department of Human Resources Development . . . ." 154 F.3d at 353. In another case in which the requisite similarity was found, the "plaintiff [and the other two employees] held the exact same position...; they all performed the same job duties and reported to the same supervisor; they were all subject to the same rules; and they were disciplined for engaging in identical misconduct." *Tribble v. Cincinnati Bell Tel.*, Case No. 09-cv-568-HRW, 2011 WL 3727402, *33 (S.D. Ohio, May 4,2011), R&R adopted 2011 WL.3627284 (Aug. 17, 2011).

By contrast, courts have not found coworkers to be similarly-situated when the relevant factors are not "nearly identical" or when key similarities are missing. *See Pierce*, 40 F.3d at 802 (supervisor and subordinate not sufficiently similar in job responsibilities or knowledge of harassment policy); *see also Parries v. Makino, Inc.*, 148 Fed. Appx. 291, 296-297 (6th Cir. 2005)(no proof of disparate treatment where plaintiff had prior infractions and failed to show similar severity of misconduct); *Balding-Margolis v. Cleveland Arcade*, 352 Fed. Appx. 35 (6th Cir. 2009)(younger coworkers not similarly-situated in light of differences in type and degree of misdeeds committed); *Colvin v. Veterans Administration Medical Center*, 390 Fed. Appx. 454, 459-460 (6th Cir.

2010)(plaintiff could not demonstrate that his colleague performed as poorly as he did; plaintiff's errors were more frequent and more severe).

Here, Plaintiff has not produced evidence that a similarly situated employee was disciplined less harshly for the same conduct. Plaintiff argues that SIR employee Chris Prybal, who was age 31 at the time of Plaintiff's firing, was similarly situated and disciplined less severely. However, Plaintiff and Prybal worked in different departments and committed different acts - critical facts that prevent the two from being similarly situated.

On August 6, 2008, Prybal emailed Plaintiff a list of stocks (the Zacks list) following a request from Plaintiff that came after a conversation about Plaintiff's own "personal" trading. (Doc. 40 at 9, citing Green Depo at 31-32). Prybal's email to Plaintiff of the Zacks list violated the Defendant's Non-Disclosure Policy; Plaintiff testified that Prybal had emailed the Zacks list on one other occasion. Prybal also emailed "Sales Commentaries" to Plaintiff as part of his job duties, in accordance with company policy. When Prybal's transmission of the Zacks list was discovered, he was verbally counseled but not terminated.

Much like the plaintiffs in *Balding-Margolis* and *Colvin*, however, Plaintiff is unable to demonstrate that Prybal's misconduct was as serious as his own. Unlike Prybal, Plaintiff committed multiple violations of Defendant's Non-Disclosure Agreement and Email Policy when he sent contact information for three clients to his personal email account, as well as a variety of sales and activity reports on at least five different occasions in March and April of 2008. In total, Plaintiff transmitted emails on at least

nine different dates between March and August, 2008 that Defendant found to be violations of its policies.

The breaches by Prybal, while related, differed not only in quantity, but in kind and degree. Prybal's breaches of company policy were in response to Plaintiff's requests for information. Although Prybal violated policy by emailing the Zacks information on one or two occasions, it is not clear that Prybal was aware of Plaintiff's intent to forward the confidential data outside of the company. Prybal sent the information to Plaintiff internally, whereas Plaintiff sent the information to a non-employee via external e-mail. Prybal was employed on the Quantitative Analysis Team, whereas Plaintiff was a sales representative on the Conversions Team.

Plaintiff argues that Prybal's violations should have been deemed to be the more serious, because Prybal was aware of the confidential nature of the Zacks information, whereas Plaintiff testified that he was unaware the information was confidential. However, Prybal's job on the Quantitative Analysis Team did not involve direct contact with customers. Even though Plaintiff views Prybal's misconduct as the more culpable, a stronger conclusion is that Defendant reasonably viewed as different and more culpable the violations of a sales associate who transmitted confidential information to a source outside of the company on multiple occasions than the violations of an analyst who transmitted confidential information *within* the company on not more than two occasions, at Plaintiff's request.

Plaintiff also committed numerous breaches of the Email Policy unrelated to the transmission of Zacks listings provided by Prybal, by transmitting the "Sales

Commentaries" (an internal email) to Adams, and both confidential customer information and sales and activity reports to his home email address on multiple occasions. It is reasonable to believe that Plaintiff's multiple external breaches of company policies were more concerning to SIR than Prybal's internal transmission(s). The differences between Plaintiff's and Prybal's roles within the company as well as the number, kind, and degree of their respective violations prevent them from being similarly-situated. Accordingly, Defendant is entitled to summary judgment because Plaintiff has failed to establish the fourth element of his age discrimination claim.

### 3. Evidence of Pretext

Even if Plaintiff were able to establish a prima facie case, Defendant persuasively argues that it is also entitled to summary judgment based upon Plaintiff's failure to rebut Defendant's legitimate nondiscriminatory reasons for the termination. The Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Financial Services, Inc*., 129 S.Ct. 2343 (2009); *see also Chen v. Dow Chemical Co.*, 580 F.3d 394 (6th Cir. 2009).

The first type of showing "consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e*., that they are "factually false." *Manzer*, 29 F.3d at 1084 (citation omitted). The third showing "ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even

though they engaged in substantially identical conduct substantially identical to that which the employer contends motivated its discharge of the plaintiff." *Id*. "If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id*. For the second showing, where "the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal," the plaintiff must introduce additional evidence of discrimination to show pretext. *Id*. (emphasis original).

At several times in his memorandum in opposition to Defendant's motion, Plaintiff implies that the issue of pretext must always go to a jury. For example, Plaintiff recites (Doc. 40 at 34): "In every civil rights action it is the responsibility of the jury to determine whether defendant's actions were invidious, pretextual, or improperly motivated." *Johnson v. University of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000), *cert denied*, 531 U.S. 1052 (2000). However, Plaintiff uses this quotation and others like it to overstate the case law in the Sixth Circuit. If a plaintiff fails to carry his burden to rebut a defendant's legitimate, nondiscriminatory reasons for the termination, summary judgment is appropriate. *See Barnhart v. Peckrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1395 (6th Cir. 1993).

The ultimate question in every employment discrimination case is whether the plaintiff was the victim of intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). Therefore, at this step of the analysis, Plaintiff must present evidence creating a genuine issue of fact that the defendant's articulated reason is false and was a pretext for discrimination based on Plaintiff's age. *St. Mary's*

*Honor Ctr. v. Hicks*, 509 U.S. at 506-507. Plaintiff must put forth sufficient evidence in opposition to a motion for summary judgment for the Court to submit the issue of pretext to the jury. As the Sixth Circuit explained in *Chen v. Dow Chemical Co*., 580 F.3d 394, 400 n.4:

> At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial. *Hicks*, 509 U.S. at 511, 113 S. Ct. 2742. But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000). ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Id*.

Of course, in evaluating pretext, courts should not apply the three-part *Manzer* test in a formalistic manner. *See id*. "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id*. The court must ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong that evidence is. *Id*.

"A plaintiff must allege more than a dispute over the facts upon which his discharge was based in order to establish pretext. " *Tribble,* 2011 WL 3627402 at *7 (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-494 (6th Cir. 2001)). He must put forth evidence that demonstrates the employer did not "honestly believe" in the proffered nondiscriminatory reason for its adverse employment action. *Id.* (citing *Smith v. Chrysler Corp*., 155 F.3d 799, 806-07 (6th Cir. 1998)). An honest belief in an

employer's nondiscriminatory reason for discharging the employee is shown "where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Chrysler Corp.*, 155 F.3d at 807). As long as an employer has an honest belief in its proffered nondiscriminatory reason for the termination, the employee cannot establish that the reason was pretextual simply because it is ultimately proven to be incorrect. *Id.*

In this case, even if Plaintiff had come forward with sufficient evidence to establish a prima facie case of age discrimination, Defendant has articulated a legitimate, non-discriminatory reason (Plaintiff's violations of company policies) to terminate Plaintiff's employment. (Doc. 45 ¶ 45). Plaintiff has failed to demonstrate pretext by any of the three methods offered in *Manzer*, or by any other means.

With respect to the first and third bases under *Manzer*, Plaintiff cannot demonstrate that SIR's termination of the Plaintiff has no basis in fact or that the reasons were factually insufficient to motivate the termination. SIR has cited to its Non-Disclosure Agreement and Email Policy and to the Plaintiff's multiple breaches of each. (Doc. 45 ¶ 12, 13, 14, 22, 26, 32). Plaintiff has admitted to sending all of the emails that Defendant determined were a breach of the two policies.

Plaintiff argues that, despite those admissions, he has not admitted to breaching the policies, for two reasons. He claims, first, that he did not know at the time that his email transmissions breached the policies. Plaintiff testified that he did not believe at the time that he needed company permission to send customer contact information to

his home email address "so that he could talk about non-work matters on his own time." (Doc. 40 at 9, citing Unemployment Tr. at 45). Plaintiff also argues that he was entitled to send the sales reports, containing information relating to his own productivity, to himself. However, a company is entitled to enforce its corporate Non-Disclosure and Email policies without reading into those policies an unstated *mens rea* element, as if the policies were akin to a state criminal code. In other words, an employee's professed ignorance that his behavior constituted a violation does not mean that the violation did not occur.

As a second argument that Defendant's stated reasons for the termination had no basis in fact or were factually insufficient, Plaintiff contends that the emails did not constitute violations because he "only...sent non-proprietary and non-confidential information to himself and Julius Adams." (Doc. 40 at 24). Plaintiff argues that by its terms, the Non-Disclosure Policy is violated only when information is "designated as being confidential, proprietary, or a trade secret." Plaintiff claims that no violation occurred because no one expressly identified the Zacks information, sales and activity reports, or other emailed information as falling within the protected category.

Plaintiff's admissions are sufficient to demonstrate a violation of - at the very least - the Email Policy. Although Plaintiff disputes whether sending himself customer information for the purpose of "non-work" matters violated the Email Policy, the terms of the Policy very clearly state that "E-mail is not to be used to disclose ... subscriber data of any kind...." Likewise, the fact that the Zacks lists and sales reports did not carry an express label that the information was proprietary does not mean that the Defendant

had not designated the information as within the category of information it considered to be proprietary. Even Prybal admitted that the Zacks information was proprietary in the format in which it was sent, notwithstanding the lack of an overt designation. Plaintiff also admitted in deposition testimony that he was not free to forward internal emails on to customers. (Doc. 33 at 48:12-14). To show pretext, a plaintiff who argues that his actions were not clearly prohibited by a company rule must do more than argue that the employer applied its policy too strictly. *See Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 561 (6th Cir. 2009)(plaintiff's assertion that her activities were not clearly prohibited is not enough, "without other evidence of employer unreasonableness or dishonesty- especially where a reasonable investigation has been conducted -...to create a material dispute over whether [defendant's] proffered explanation was merely a pretext for an unlawful business practice.").

Plaintiff also cannot show that the reasons provided by Defendant did not actually motivate the employer's decision. There is no dispute that Defendant previously terminated another employee (Johnson) for violation of the same policies, and pursued additional remedies against that employee in litigation. Johnson was fired shortly before Plaintiff was hired, and the litigation against him was resolved less than two months prior to discovery of Plaintiff's violations. Plaintiff complains, with some justification, that Johnson's alleged violations were far more egregious because they involved the purposeful taking of "thousands" of customer names and other information for private gain, whereas Plaintiff transmitted contact information concerning just three customers for non-business reasons. It is true that Defendant did not cite the Johnson

matter at the time it terminated Plaintiff. Nevertheless, the *Johnson* litigation demonstrates the seriousness with which Defendant viewed the policies that it determined Plaintiff had violated. In addition, the temporal proximity between the discovery of Plaintiff's violations and the Johnson matter adds credence to the employer's hypersensitivity and motivation to strictly enforce its policies in this case, as well as to its historical proof that violations of the referenced policies would result in termination. (Doc. 38-2, Wilson Decl. at ¶¶ 2, 4-7, company was "hypersensitive").

In an attempt to prove that discriminatory reasons were the "true" reasons for his termination, Plaintiff points out that his supervisor refused to explain the details of his violations at the time of his termination, and that in her deposition, Denise Wilson cited to different paragraph numbers of the Non-Disclosure Agreement than she testified to during Plaintiff's unemployment compensation hearing. Fatal to Plaintiff's argument, however, are the undisputed facts that: 1) Defendant investigated and discovered the alleged violations on August 13; 2) Defendant cited Plaintiff's violations of the two policies as the basis for the termination at the time of termination; 3) Defendant has been consistent in alleging the violations through this litigation, notwithstanding minor discrepancies in one supervisor's citation to paragraph numbers of one of the policies in question; and 4) Defendant has consistently explained the factual details of the violations.

Plaintiff theorizes that Defendant was determined to find reasons to get rid of older employees, again citing his evidence concerning the number of terminations of older employees during a reorganization that occurred near in time to Plaintiff's

termination for cause. Although the Court has concluded that Plaintiff's limited statistical evidence is not sufficient to prove that he was replaced by a younger worker or treated less favorably than a similarly situated employee in the context of Plaintiff's prima facie case of age-based discrimination, courts have held that such "background evidence" may be relevant to the issue of pretext. *See, e.g., Gorski v. Myriad Genetics,* 2007 WL 2021843 (E.D. Mich. July 12, 2007)(citing *Robinson v. Runyon,* 149 F.3d 507, 513 (6th Cir. 1998)); *contrast Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152 (6th Cir. 1988). Of course, the smaller the statistical sample size, the less probative the evidence will be. However, even small statistical samples, particularly when coupled with other circumstantial evidence, can raise a triable issue of fact on whether the employer's proffered reason for dismissal was a pretext for discrimination. *See Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 593 (6th Cir. 2002). Here, however, the methodology and explanatory power of Plaintiff's statistical analysis simply does not permit an inference of discrimination sufficient to raise a triable issue of fact that Defendant's otherwise nondiscriminatory reasons for Plaintiff's termination were pretextual. *See Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519 (6th Cir. 1997).

Plaintiff also cites *Hamilton v. General Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009), a case involving a retaliation claim, in support of the proposition that pretext can be proven when an employer "waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee." *Id.*, 556 at 436 (citing *Jones v. Potter*, 488 F.3d 397, 408 (6th Cir. 2007)). Plaintiff asserts that if Defendant had actually been motivated by alleged breaches of its

policies, Defendant would have more "vigorously monitored and enforced" the Email Policy and brought the alleged violations to Plaintiff's attention back in April of 2008, closer in time to when Plaintiff committed his first alleged violation. (Doc. 40 at 9).

The latter argument disproves the former. Had Defendant actually been lying in wait searching for an opportune reason to terminate Plaintiff on the basis of age, logic suggests that Defendant indeed would have seized upon the opportunity to fire him for cause back in April of 2008, or not later than during its restructuring period in June of 2008. Instead, Defendant waited until August 13, 2008 to investigate, upon noticing suspicious activity, and to discover grounds for termination. The only reasonable conclusion is that Defendant had no intention of firing Plaintiff prior to discovery of Plaintiff's policy violations on August 13, 2008.

Finally, Plaintiff makes a general argument that the Defendant's stated reasons for termination were unjust and unreasonable. Plaintiff complains that if Defendant had conducted a more complete investigation, Defendant would have discovered that the alleged violations were both unintentional and inconsequential. Instead, Plaintiff's supervisors, Wilson and Kuykendall, refused to provide Plaintiff with any opportunity to explain his conduct. Wilson testified that nothing Plaintiff could have said at his termination meeting would have changed her mind. (Doc. 40 at 32).

Plaintiff argues that his conduct was so innocuous that Defendant should have imposed a less severe punishment, such as counseling and requesting that Plaintiff retrieve the Zacks information from Adams.[4] Plaintiff notes that most of the Zacks

---

[4] Plaintiff does not explain precisely how he would "retrieve" the email transmission of such time-sensitive information.

information, with the exception of a chart that Prybal compiled, was generally available for free on the internet and arguably neither valuable nor confidential. (Doc. 40 at 12, citing Prybal Depo. at 35, 39). Under *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003), Plaintiff argues that jurors could find that Defendant's stated reasons were so unreasonable as to demonstrate pretext, given the type of information transmitted, Plaintiff's innocent explanations, the fact that Plaintiff was a top performer, and Defendant's general policy of progressive discipline (Unemployment Tr. at 20).

Plaintiff argues that his evidence questioning Defendant's business judgment is sufficiently strong to put the issue of pretext to a jury. However, in *Wexler*, the plaintiff had provided a significant amount of direct evidence of age discrimination, including discriminatory remarks by two supervisors - evidence that was also considered in evaluating the employer's proffered nondiscriminatory reasons for the termination. *See id.*, 317 F.3d at 577 (circumstantial evidence undermining basis for termination was sufficient to show pretext "[w]hen combined with the age-related statements" of two supervisors). The plaintiff in that case had also shown, in the context of his prima facie case, that a similarly situated younger manager was not terminated for the same conduct. *Wexler* cannot be stretched to permit a jury to second guess an employer's business judgment on such weak and speculative evidence of pretext as is presented in this case. That a fact finder might find fault with an employer's judgment or might have reached a different conclusion is irrelevant, absent evidence that the employer's asserted judgment was so ridden with error that the defendant could not have honestly believed it. *See Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627 (6th Cir. 2006)(a

federal court is not a "super personnel department, overseeing and second guessing employers' business decisions.")(internal quotations omitted).

In this case, although Plaintiff wishes that his employer had looked deeper into the reasons behind his violations of the company policies, he does not question the facts discovered during the course of Defendant's investigation.  An employer's investigation need not be perfect in order to pass muster as reasonable and nondiscriminatory.  This is not a case in which the Defendant inconsistently applied its policies; Plaintiff points to no evidence that any other employee sent internal emails outside of the company and retained his or her position.

### 4.  Same Actor Defense

One final argument deserves brief mention.  Defendant points out that Plaintiff was hired at the age of 52, and argues that it is improbable that Defendant would discriminate against Plaintiff at age 54.  However, Plaintiff notes correctly that he was hired by an employee older than Plaintiff, but fired by a much younger supervisor.  Plaintiff is correct that Courts are less apt to recognize the "same actor" inference when different supervisors are involved in the hiring and termination decisions.  *See, e.g., O'Bryan v. KTIV Television,* 64 F.3d 1188, 1192-93 (8th Cir. 1995).  Just the same, Defendant is clearly entitled to summary judgment on other grounds.

### III. Conclusion and Recommendation

For these reasons, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 38) be **GRANTED**, and that this case be **CLOSED**.

 s/ Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LARRY GREEN,                                    Case No. 1:09-cv-360

       Plaintiff,                           Weber, J.
                                                Bowman, M.J.

v.

SCHAEFFER'S INVESTMENT
RESEARCH, INC.,

       Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).