**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**LARRY GREEN,**

        **Plaintiff**


        **v.**                      **Case No. 1:09-cv-360-HJW**

**SCHAEFFER'S INVESTMENT**
**RESEARCH, INC.,**

        **Defendant**


## ORDER

        This matter is before the Court upon the defendant's "Motion for Summary Judgment" (doc. no. 38), which plaintiff opposes.  Defendant has submitted "Proposed Findings of Fact and Conclusions of Law" (doc. no. 37), which the plaintiff has highlighted as true, false, or irrelevant (doc. no. 45).  The Magistrate Judge has entered a Report and Recommendation (doc. no. 48), recommending that the defendant's motion be <u>granted</u>.  Plaintiff filed objections (doc. no. 51) and defendant responded (doc. no. 52).  The parties filed additional briefs (doc. no. 53-55) which function as a reply, sur-reply, and sur-sur-reply.  Upon *de novo* review of the record, including the objections and responses, the Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the facts of this case.  Therefore, the  Court will <u>overrule</u> the plaintiff's objections and <u>grant</u> the defendant's motion for summary judgment for the following

reasons:

## I. Background and Procedural History

      The facts are fully set forth in detail in the Magistrate Judge's Report and Recommendation (doc. no. 48) and need only be summarized here. Defendant Schaeffer's Investment Research, Inc. ("SIR") is a company that researches investments and sells informational products, such as home study programs, DVDs, CDs, and newsletters, for use by its customers in options trading. SIR maintains a confidential database of subscribers, prospective subscribers, their contact information, their buying history, and other account information (doc. no. 45 at ¶¶ 1-3; see also, 38-1 at 11-12).

      On October 31, 2006, plaintiff Larry Green (at age 52) was hired to work at SIR as a sales consultant. His role was to sell SIR's products and services over the telephone to individuals in SIR's existing subscriber database (doc. no. 45 at 2, ¶¶ 8-10). When hired, plaintiff signed two agreements as a condition of his employment: a "Non-Disclosure Agreement" and an "Email and Internet Policy" (¶ 11, 14). The Non-Disclosure Agreement provides in relevant part:

> As an employee of Schaeffer's Investment Research, Inc. ("the Company"), I understand that, because of competitive and potential "insider" information reasons, certain actions on my part must be prohibited or restricted. I, therefore, understand and agree to the following conditions:
>
> . . . .
>
> 2. Divulging investment recommendations of the Company to other than active subscribers is prohibited, except with the advance express permission of an officer of the

Company.

**3. Divulging to anyone investment recommendations (or possible investment recommendations of the Company) before publication is prohibited.**

**4. Divulging to anyone procedures used by the Company is arriving at investment recommendations is prohibited, except with the advance express permission of an officer of the Company.**

**. . . . .**

**6. Divulging to anyone the names, demographics, sources, or any other information about the Company's subscriber lists, promotion lists, or any other list of names is prohibited without the advance express permission of an officer of the Company.**

**7. Divulging to anyone any other information about the Company which the Company has designated as being confidential, proprietary, or a trade secret is prohibited without the advance express permission of an officer of the Company .**

**I further understand that violation of any of the above conditions shall be considered a breach of contract, may result in my dismissal from employment and shall subject me to liability for damages that may result from my actions.**

(doc. 45 at ¶ 12, citing Green Dep. at Ex. 3; doc. no. 33-2 at 23 "Non-Disclosure

Agreement").  The Email Policy further provided:

> **"E-mail is not to be used to disclose trade secrets, Company or subscriber data of any kind, or any other confidential information . . . All e-mail, internet records, and computer-generated documents are Company property and are subject to review . . . Misuse and abuse of our system or violations of our policy will be subject to disciplinary measures up to and including termination, and/or legal actions based on the severity of the violation.**

**(Doc. 33-2 at 24-25).**

**While plaintiff was working for SIR, the company filed a lawsuit against a former employee (Chris Johnson) for his alleged misappropriation of SIR's confidential information in violation of these policies.  Plaintiff was aware of this and acknowledged at deposition that he knew this misappropriation of company data was a "pretty big deal" at SIR (doc. no. 33 at 5, Green Dep. at 20, lines 1-4).[1]  That case eventually settled.**

**In June of 2008, SIR restructured and divided its sales force into two teams: the Alert Team and the Conversion Team.  As part of this restructuring, SIR terminated six sales associates, five of whom were over the age of forty (40).  Plaintiff survived the reduction in force ("RIF") and was assigned to work on the Conversion Team, supervised by Jason Kuykendall.  Plaintiff's duties included converting "leads" (i.e people who had expressed interest but not paid for any services) into paid subscribers of SIR's products and services.  Although plaintiff had previously received several warnings about his work habits, plaintiff subsequently improved his performance and was the highest producing**

---

[1]**Plaintiff contradicts himself by red-lining as "disputed" the statement that he "was aware that SIR took its Non- Disclosure Agreement and Email and Internet Policy very seriously, and made a practice of enforcing these policies with other employees" (doc. no. 45 at 4, ¶ 15).  On summary judgment, a party cannot create a "factual dispute" merely by contradicting his earlier testimony. Lanier v. Bryant, 332 F.3d 999, 1004 (6th Cir. 2003); Hughes v. Vanderbilt Univ., 215 F.3d 543, 549 (6th Cir. 2000).**

representative on the Conversion Team for the month of July 2008.[2]

On August 13, 2008, while Kuykendall was training two new employees who had been hired the previous week, he was monitoring the sales consultants' phone calls with customers.  Kuykendall noticed that plaintiff's phone had a busy signal for several minutes.  He also noticed that, although plaintiff was typing, plaintiff's computer screen was set to email, rather than the SIR system that sales consultants must use when recording information about each telephone call with a customer.  Kuykendall believed the situation was unusual and asked the IT department to send him plaintiff's emails for review.  Kuykendall discovered that plaintiff was missing entire months of records for email sent, even though it was against company policy for employees to delete these (doc. no. 38-1 at 34).  In plaintiff's remaining emails, Kuykendall discovered that plaintiff had sent e-mails with subscriber and company information to his personal email address and had sent stock rankings ("Zacks Lists") to a former subscriber several times without authorization (Id.).[3]

Specifically, on March 20, 2008 and April 4, 2008, plaintiff had sent contact information for former SIR subscriber Julius Adams to plaintiff's personal email

---

[2]For example, plaintiff received a verbal warning from supervisor John Shields on February 5, 2008 for being at the office during hours when employees were not allowed to there and for spending hours without making any telephone calls to customers (doc. no. 33 at 6, Ex. 6).

[3]Although plaintiff later denied deleting any emails sent (doc. no. 38-1 at 43), this does not create any sort of genuine dispute of material fact, as it was not the basis for plaintiff's termination.  Plaintiff was terminated  on August 13, 2008 because the employer's computer records showed that plaintiff had sent various emails in violation of SIR's Non-Disclosure Agreement and Email Policy.

Page 5 of  27

address (doc. no. 45 at ¶ 22). On April 4, 2008, he had sent the contact information and birth date of SIR subscriber Tim Blodgett to his personal email address (¶ 23). On April 17, 2008, plaintiff had forwarded account information about SIR customer Rob Hillman to plaintiff's personal email address (¶ 25). Plaintiff had also sent SIR progress reports, consultant activity reports, and sales commission reports to his personal email in 2008 (¶ 29). Kuykendall also discovered that plaintiff had asked Chris Prybal in SIR's quantitative analysis department to send him "Zacks Lists" (lists of the best and worst stock profitability rankings) and "Sales Commentaries" on August 6, 11, and 12, 2008. In turn, plaintiff had forwarded that information via email to former SIR subscriber Julius Adams (doc. no. 45 at ¶¶ 30, 32, 33).[4] The Zacks Lists, in raw form, were not designed or intended to be sent directly to SIR subscribers by SIR sales consultants (doc. no. 38-1 at 14-15).

Kuykendall reported his findings to Senior Vice President of SIR, Denise Wilson (doc. no. 45 at ¶ 41). Wilson considered plaintiff's acts to be clear-cut violations of company policy (doc. no. 38-1 at 16). With the approval of Bernie Schaeffer (owner of SIR), she decided to fire plaintiff that day, August 13, 2008 (¶ 44). Wilson informed plaintiff that he was terminated for violating SIR's Non-Disclosure Agreement and Email Policy (¶ 45). Wilson would not discuss details with him. Despite being fired for cause, plaintiff sought unemployment compensation.

At a subsequent unemployment hearing, Wilson testified that plaintiff was

---

[4]Plaintiff testified that Adams was a "previous subscriber" who had become a telephone "friend" of his in 2008 (doc. no. 33 at 7; 38-1, Ex. A).

terminated for violating company policy, for unauthorized use of company data, and for breach of the Non-Disclosure Agreement (doc. no. 38-1 at 10, Transcript). She explained that it was common knowledge within the company that client information was confidential. She explained that the investment information that plaintiff had sent to Adams for free was also confidential, was for internal use only, was not in finished form for use by SIR customers, and moreover, when in proper publication form, would be "the kind of information that we charge for" (doc. no. 38-1 at 11-15). She explained that this subscription typically cost $995.00 (Id. at 15).[5] At deposition, she explained that SIR did not sell the Zacks List itself, but sold "recommendations that they derive from the rank" (doc. no. 35 at 23, Wilson Dep. at 89). Wilson testified that this "information was vital to one of the services because we had a Zacks/Schaeffer's option trader service . . . this was the basis of that service" (Id.).

Although plaintiff claims that the Zacks Lists did not indicate they were confidential (doc. no. 33 at 10, Green Dep. at 37, line 2 ), Wilson testified that the Zacks Lists indicated on their face that the information was "for internal use only" (doc. no. 38-1 at 14). Wilson testified that people in the sales department did not have access to this information (Id. at 15). Wilson also testified that plaintiff had transmitted customer information from a "print screen" page from the subscriber database which also indicated at the top that it was "Confidential and Proprietary,"

---

[5]**Plaintiff indicated in his "corrections" to his deposition that the Zacks List he sent to Adams was "raw information" that had to be run through technical analysis at SIR (doc. no. 33-1 at 4). He acknowledged that SIR customers generally had to pay for this kind of information (Id. at 3, "I sold Zacks to customers who basically had that trading package before and wanted it again").**

but that it appeared plaintiff had cut off that line when he transmitted those pages (Id. at 10, 12, 13).

After his termination, plaintiff obtained a "right to sue" letter and timely filed this federal lawsuit, alleging that his employer had terminated him due to age discrimination. After discovery concluded, defendant moved for summary judgment. The Magistrate Judge recommended that plaintiff had failed to establish a prima facie case of age discrimination. Additionally, the Magistrate Judge recommended that, even assuming a prima facie case, the employer had articulated legitimate nondiscriminatory reasons for plaintiff's termination (i.e., his multiple violations of SIR's Email Policy and Non-Disclosure Agreement), but that plaintiff had failed to show that these reasons were merely a pretext for age discrimination. Plaintiff filed objections, defendant responded, and additional briefs were filed. This matter is ripe for consideration.

II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).

Under Rule 56, the moving party bears the initial burden of showing the absence of a genuine dispute of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, the court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

## III. Relevant Law

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., provides that an employer may not "discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, Ohio Rev. Code § 4112.02(A) prohibit an employer from discharging any individual because of his age. The same evidentiary framework applies to claims under the federal and Ohio statutes. Campbell v. PMI Food Euip. Group, Inc., 509 F.3d 776, 785 (6th Cir. 2007).

A plaintiff may establish an age discrimination claim by either direct or

circumstantial evidence. <u>Martin v. Toledo Cardiology Consultants, Inc.</u>, 548 F.3d 405, 410 (6th Cir. 2008). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). For example, comments "from the lips" of the employer "proclaiming his or her . . . animus" are direct evidence of discrimination. <u>Smith</u>, 155 F.3d at 805. If a plaintiff presents direct evidence of discrimination, the burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 414 U.S. 811 (1973) does not apply.

"Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow the factfinder to draw a reasonable inference that discrimination occurred." <u>Id</u>. For an age discrimination claim based on circumstantial evidence, a plaintiff may establish a prima facie case by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position; and 4) he was replaced by a substantially younger individual or by showing that he was treated less favorably than a substantially younger, similarly-situated individual.[6] <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, 312-313 (1996); <u>Martin</u>, 548 F.3d at 410.

If plaintiff fails to make a prima facie case based on circumstantial evidence, the employer is entitled to summary judgment. If plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate,

--------

[6]This may include an employee within the protected class.

nondiscriminatory reason for the adverse employment action. **McDonnell Douglas,** **411 U.S. at 802-04; Geiger v. Tower Automotive, 579 F.3d 614, 622 (6th Cir. 2009)** **(applying burden-shifting to ADEA claim based on circumstantial evidence). Plaintiff** **must then show that the reasons offered by the employer were not the true reasons** **and were merely a "pretext" for age discrimination. Under either type of evidence,** **the burden of persuasion remains on the plaintiff to show "that age was the 'but-for'** **cause of the employer's adverse action." Gross v. FBL Financial Services, Inc., 557** **U.S. 167, 129 S.Ct. 2343, 2351 n. 4 (2009); see also, Geiger, 579 F.3d at 620.**

**IV. Plaintiff's Objections**

At the fourth step of the prima facie case, plaintiff objects to the Magistrate Judge's recommendations that 1) plaintiff did not show he was "replaced" by a substantially younger person; or 2) that he was treated less favorably than any "similarly situated" substantially younger employees (doc. no. 51 at 6-10). Plaintiff also contends (inaccurately) that the Magistrate Judge recommended that "that the Sixth Circuit has not adopted the 'flexible' approach to the establishment of a prima facie case" and therefore objects (Id. at 6, 10-13). Finally, plaintiff objects to the recommendation that plaintiff has not shown that the employer's reasons for his termination were merely a pretext for age discrimination (Id. at 13-20).

**V. Discussion**

**A. Objections to Recommendations at Step Four of Prima Facie Case**

It is undisputed that plaintiff (1) is over forty years of age; (2) was terminated; and (3) was qualified for his job as a sales consultant (doc. 38 at 3, "SIR assumes

that Green can satisfy the first three elements of the prima facie case"). The parties argue at step (4) of the analysis. The Magistrate Judge recommended that plaintiff had not established a prima facie case of age discrimination because plaintiff did not show that he was "replaced" by a substantially younger employee or that he was treated less favorably than any "similarly situated" substantially younger employee. Plaintiff objects and points out that the defendant "hired two young employees on August 8, 2008 who were in the process of being trained when plaintiff was terminated on August 13, 2008" (doc. no. 51 at 1).

The Magistrate Judge correctly recommended that plaintiff has not shown that he was replaced, much less that he was replaced by a substantially younger employee. Although plaintiff contends that five of six employees terminated in the June 2008 restructuring were over the age of forty (Id. at 2), it is undisputed that plaintiff survived the restructuring. Very simply, he was not terminated in connection with the restructuring. The Magistrate Judge correctly pointed out that plaintiff was later terminated for cause (doc. no. 48 at 11). Although plaintiff had some past performance problems, he was the highest sales performer for the month of July of 2008. He was not terminated until August 13, 2008, when his supervisor discovered that plaintiff had repeatedly violated SIR's Email and Non-Disclosure policies. In other words, the June 2008 reduction in force and plaintiff's later termination for cause were unrelated.

In an attempt to show he was "replaced," plaintiff points to some statistical evidence regarding the firing of some older workers and the hiring of some younger

workers that year. Although plaintiff contends that some younger employees were hired at various times in 2008, the Magistrate Judge correctly points out that these employees were hired <u>before</u> plaintiff was <u>terminated for cause</u> (doc. no. 48 at 10-11).[7] Plaintiff speculated at deposition that he had been "replaced" by one of these younger employees because SIR had to have "somewhere for them to sit" (doc. no. 33, Green Dep. at 64-65). Plaintiff's own subjective belief is insufficient to establish the fourth step of a prima facie case. See <u>Arendale v. City of Memphis</u>, 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, plaintiff cannot rely on conjecture or conclusory allegations").

The Magistrate Judge correctly noted that plaintiff's supervisor, Jason Kuykendall, testified at deposition that plaintiff was not replaced and that there was "zero connection" between plaintiff's termination and the previous hiring of any employees (doc. no. 48 at 11; Kuykendall Dep. at 49, lines 12-22). All of the "substantially younger" employees referred to by plaintiff were hired <u>prior</u> to the employer's discovery of plaintiff's policy violations. This undermines plaintiff's illogical suggestion that these younger employees were hired in advance to "replace" him, particularly since he had already survived the restructuring. The inference suggested by plaintiff is not reasonable, and the Magistrate Judge appropriately declined the plaintiff's attenuated "inferential reasoning" based on it (doc. no. 48 at 12). See <u>O'Connor</u>, 517 U.S. at 311 ("there must be at least a logical

---

[7]In March and June of 2008, SIR hired two new employees under age 30. On July 7, 2008, SIR hired three more employees under age 30.

connection between each element of the prima facie case and the illegal discrimination").

The Magistrate Judge aptly pointed out that plaintiff had cited no case where a court had "permitted a plaintiff to use this type of statistical analysis to show that he was 'replaced' by a younger employee in a case where the plaintiff was fired 'for cause,' and not during the period of restructuring" (doc. no. 48 at 12). Plaintiff's statistical evidence is also problematic because, as the Magistrate Judge correctly observed,  it involves only a very small sample size and incomplete data (Id. at 12, fn. 3). Plaintiff's attempt to rely on statistical evidence as proof of "replacement" is misplaced.  As the Magistrate Judge noted, "plaintiff's methodology and explanatory comments are neither clearly articulated nor persuasive" (Id.).  Plaintiff, who was terminated for cause, is essentially attempting to draw unwarranted inferences from "RIF" statistics with respect to his own non-RIF termination for cause.

Plaintiff also complains that his claim of age discrimination under Ohio law was not "separately" addressed (doc. no. 51 at 7).  Plaintiff argues that under Ohio law, the fourth step can be met by showing that the termination of a protected-age employee allowed the retention of a substantially younger employee.  This objection fails for the simple reason that  the record is completely devoid of any evidence that plaintiff's termination allowed the retention of a younger employee.  The Magistrate Judge fully discussed the plaintiff's faulty arguments regarding the RIF evidence and plaintiff's termination for cause (doc. no. 48 at 10-12).  The Court notes that plaintiff offered the RIF statistics in an attempt to raise an inference that SIR held older

employees in disfavor, not to show that plaintiff's discharge allowed retention of a younger employee.  Plaintiff has shown no error in the Magistrate Judge's analysis on such basis.

At the fourth step, plaintiff also contends that he was "similarly situated" to Chris Prybal (age 31), but that he was treated more harshly, i.e, he was terminated for the "same" conduct.  The evidence, however, belies such contention.  As the Magistrate Judge correctly discussed, plaintiff has pointed to no "similarly situated" employee who repeatedly violated SIR's Email and Non-Disclosure policies and was not terminated (doc. no. 48 at 16).  Plaintiff and Prybal were not similarly-situated as they worked in different departments and committed different acts.  The Magistrate Judge correctly pointed out that plaintiff and Prybal held very different jobs (i.e. plaintiff was a sales consultant, whereas Prybal was an analyst in the quantitative research department, with no customer contact), and that they committed substantially different infractions (i.e. Prybal emailed some information in-house to a co-worker, whereas plaintiff sent multiple external emails to himself and to a former subscriber).  Plaintiff sent himself confidential client information and sent a former subscriber ("friend") some investment profitability rankings for free.  Prybal did not do this.  Plaintiff committed numerous infractions, whereas Prybal sent only a few in-house emails.  The Magistrate Judge appropriately recommended that plaintiff has not shown that Prybal's misconduct was "as serious as his own" (doc. no. 48 at 16).  Plaintiff's objection to the Magistrate Judge's analysis at step four is meritless.

Having failed to establish a prima facie case, plaintiff further objects that "even if plaintiff was not replaced, and even if Prybal was not similarly situated to plaintiff, "the attendant circumstances present sufficient evidence to establish a prima facie case" (doc. no. 51 at 10).  Plaintiff relies on a case that is readily distinguishable, as it involved actual statements by management indicating that the company wanted to "shed low performers" to make way for "new younger" growth. Id., Appx. A, copy of decision in Mauer v. Deloite & Touche, LLP., No. 1:08-cv-803 (October 26, 2010, Weber, J.).  Such is not the case here.   Plaintiff has not pointed to any age-based comments that might amount to direct evidence, and moreover, Wilson testified that, in her duties with respect to terminating employees, she had not been told that age was a criteria, much less heard any such comments (see doc. no. 35 at 8, Wilson Dep. at 27, 40).  Plaintiff's objection falls quite short of showing any error in the Magistrate Judge's well-reasoned analysis.  In urging that the "attendant circumstances" were purportedly sufficient to establish a prima facie case, plaintiff essentially rehashes the same arguments and evidence already found insufficient at step four of the McDonnell Douglas framework.

The Court observes that the plaintiff's characterization of the Magistrate Judge's recommendation is inaccurate.  Plaintiff objects on the basis that the Magistrate Judge purportedly recommended that "the Sixth Circuit has not adopted the 'flexible' approach to the establishment of a prima facie case" (doc. no. 51 at 6). In fact, the Magistrate Judge actually recommended that "Plaintiff's theory is insufficient under existing Sixth Circuit case law to show that he was replaced by a

younger worker" (doc. no. 48 at 13)(citing <u>Green v. Fidelity Investments</u>, 2009 WL

366607, <u>aff'd</u> 374 Fed. Appx. 573 (6th Cir.), *cert. denied*, 131 S. Ct. 598 (2010)).  The

Magistrate Judge accurately noted the <u>Green</u> decision rejected the same plaintiff's

"flexible" approach to the McDonnell Douglas test <u>on the facts presented</u> (doc. no.

48 at 13) (emphasis added).  The Court of Appeals for the Sixth Circuit addressed

plaintiff's creative notion about how to use a "flexible approach," found plaintiff's

supporting evidence lacking, and carefully explained that:

> "While it is true that the McDonnell Douglas test should
> not be formalistically applied, . . . this court routinely
> affirms the grant of summary judgment for failure to
> establish a prima facie case based on the McDonnell
> Douglas criteria . . .  The fact that Green cannot establish
> a prima facie case under the framework is not itself a
> sufficient reason to dispense with the test in favor of a
> more forgiving standard. Regardless, under any standard,
> Green's circumstantial evidence, consisting primarily of
> perceived social slights and his own subjective view that
> his performance made the decision otherwise irrational,
> do[es] not suggest that his age was the 'but-for' cause of
> his termination." <u>Id</u>. at *4.

Similarly, in the present case, plaintiff's circumstantial evidence is insufficient to

establish a prima facie case under the applicable framework or under the "attendant

circumstances" urged by plaintiff.   As evidence, plaintiff depends largely on

questionable  inferences drawn from limited statistics from a prior RIF and some

new hires in the months prior to plaintiff's unrelated termination for cause.  This is

insufficient to avoid summary judgment.  "The mere existence of a scintilla of

evidence in support of the [plaintiff's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [plaintiff]." <u>Moldowan v.</u>

City of Warren, 578 F.3d 351, 374 (6th Cir. 2009).

Although the Court of Appeals for the Sixth Circuit recognizes that "the McDonnell Douglas test should not be formalistically applied," the test does apply. Green, 2009 WL 366607 at *4. Plaintiff urges this Court to bypass the McDonnell Douglas test because he believes he can raise an inference of discriminatory animus based on RIF-related statistical evidence, even though he was terminated for cause independently of the prior RIF. This is not persuasive, nor consistent with established law. Moreover, plaintiff's attempt to show a "pattern of discrimination" based on a small statistical sample from a prior RIF has doubtful, if any, relevance to plaintiff's well-documented termination for cause. Under the facts of this case, plaintiff's circumstantial evidence simply does not suggest that his age was the 'but-for' cause of his termination. Plaintiff's objection is meritless.

As plaintiff has not established a prima facie case, it is unnecessary to proceed further. However, as the plaintiff has also objected to the Magistrate Judge's analysis of "pretext," the Court will consider those objections as well.

B. Objections to Recommendations Regarding Pretext

Even supposing that plaintiff had made a prima facie case, the defendant has articulated a legitimate non-discriminatory reason for plaintiff's discharge, i.e. his multiple violations of SIR's Email Policy and Non-Disclosure Agreement. The burden of production then shifts to plaintiff to show that the employer's stated reason was merely a pretext for age discrimination. A reasons is pretextual if it: 1) had no basis in fact; 2) did not actually motivate the employer's decision; or 3) was insufficient to

warrant the decision. <u>Manzer v. Diamond Shamrock Chemicals Co.</u>, 29 F.3d 1078, 1084 (6th Cir. 1994), overruled on other grounds by <u>Gross v. FBL Financial Services, Inc.</u>, 129 S.Ct. 2343 (2009); and see, <u>Chen v. Dow Chemical Co.</u>, 580 F.3d 394, 400 (6th Cir. 2009) (emphasizing that "pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?"). The plaintiff argues objections under all three prongs (doc. no. 51 at 13-20).

Under the heading of "no basis in fact" and "insufficient to motivate the termination," plaintiff generally objects to the Magistrate Judge's recommendation that plaintiff did not make either showing (doc. no. 51 at 14). The Magistrate Judge pointed out that the employer had cited plaintiff's multiple breaches of the Email Policy and Non-Disclosure Agreement as the reason for his immediate termination (doc. no. 48 at 21, citing doc. no. 45 at ¶¶ 12-14, 22, 26, 32). The Magistrate Judge correctly pointed out that the plaintiff <u>admitted</u> sending all the emails and company information at issue (<u>Id</u>. at 22).

Although it is undisputed that plaintiff sent the emails and information, he disputes whether the information was "confidential" and whether his acts violated company policy (doc. no. 45, ¶¶ 15, 21, 25, 29, 30, 33, 36, 40, 42, 43). The Magistrate Judge fully addressed this in considerable detail. In his objections, plaintiff continues to deny that he violated any policies (doc. no. 51 at 14). He claims he had "no reason to believe that the items in question were confidential" (<u>Id</u>. at 15). He argues that the Zacks Lists he sent to Adams were not "confidential" because those lists contained "stock data available to anyone with an internet connection" (<u>Id</u>.). He

also urges that he did not violate the Email Policy because, although he transmitted information outside the company, there is no evidence that he "disclosed" the customer information to third parties (Id. at 14).

Even viewing the evidence in the light most favorable to plaintiff, he admittedly sent stock profitability rankings (i.e. Zacks Lists) to Julius Adams several times. Plaintiff has acknowledged that SIR customers generally had to pay for this kind of proprietary information (doc. no. 33-1 at 3-4 "I sold Zacks to customers who basically had that trading package . . ."). Plaintiff's supervisor, Kuykendall, testified that it was "common knowledge within the company" that such information was confidential and proprietary (doc. no. 38-1 at 34). Kuykendall testified that he had never authorized plaintiff to send this information to a subscriber (Id. at 33). Plaintiff acknowledged that company policy prohibited him "from sharing investment recommendations, possible recommendations or even the procedure that's used to come up with the recommendations" (doc. no. 38-1 at 47) Although plaintiff argues that the Zacks Lists did not indicate they were "confidential" (doc. no. 33 at 10), Wilson testified that the Zacks Lists indicated that they were "for internal use only" (doc. no. 38-1 at 14). Wilson explained that these lists were used by the trading/analysis departments in making recommendations and were not normally available to sales consultants (Id.).

Wilson also testified that plaintiff had transmitted customer information from a "print screen" page from the subscriber database which indicated at the top that it was "Confidential and Proprietary," but that it appeared plaintiff had cut off that

line when he transmitted those pages (doc. no. 38-1 at 10-13). With or without an express designation of confidentiality, Wilson testified that all such proprietary company information was confidential (Id.). The Email Policy, which plaintiff had agreed to as a condition of employment, expressly indicated that "All e-mail, internet records, and computer-generated documents are Company property" and that "E-mail is not to be used to disclose . . . Company or subscriber data of any kind, or any other confidential information" (doc. no. 33-2 at 24-25). The Magistrate Judge pointed out that the employer did not need to specifically mark documents in order for them to be considered confidential (doc. no. 48 at 22-23).

Plaintiff acknowledges that the stock ranking information he sent to Adams was not in final form for customers (doc. no. 38-1 at 41 "it was raw data"). The Non-Disclosure Agreement plainly states that: "Divulging to anyone investment recommendations or possible investment recommendations of the Company before publication is prohibited" (doc. no. 33-2 at 23, ¶ 3). Plaintiff's employer reasonably believed that plaintiff had also violated the Non-Disclosure Agreement on this basis. Both the Email Policy and Non-Disclosure Agreement expressly warned that violation could result in termination.

Given that plaintiff had been sending client information to his personal email, the employer reasonably believed that plaintiff had violated the terms of SIR's Email Policy. Plaintiff admitted sending subscriber data to his personal email. Plaintiff did not seek permission to send such information outside the company (doc. no. 38-1 at 49-50). Although plaintiff contends he did not believe he needed permission to

send customer account information to his personal email, the Magistrate Judge appropriately pointed out that "an employee's professed ignorance that his behavior constituted a violation does not mean that the violation did not occur" (doc. no. 48 at 22).  Although plaintiff argues that he did not disclose the subscriber data to any third parties, his argument misses the mark.  His employer reasonably believed the plaintiff's transmission of confidential subscriber information to an external email address violated SIR's Email Policy.

In considering the stated reason for discharge, a court considers whether the employer gave an honest explanation for its decision, not whether the employer's decision is correct or fair. <u>Hedrick v. Western Reserve Care System</u>, 355 F.3d 444, 462 (6th Cir. 2004) (reiterating that 'it is inappropriate for the judiciary to substitute its judgment for that of management"). As the Magistrate Judge correctly observed, "[a]s long as an employer has an honest belief in its proffered nondiscriminatory reason for the termination, the employee cannot establish that the reason was pretextual simply because it is ultimately proven to be incorrect" (doc. no. 48 at 21) (citing <u>Majewski v. Automatic Data Processing</u>, 274 F.3d 1106, 1117 (6th Cir. 2001)). Thus, plaintiff's argument that he did not violate company policy, besides being flatly contradicted by the evidence, would not in any event demonstrate that the employer somehow lacked an honest belief in the stated reason for plaintiff's termination.

The United States Supreme Court has explained that "a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." <u>St. Mary's Honor Center v.</u>

**Hicks**, 509 U.S. 502, 515 (1983);  **Skelton v. Sara Lee Corp.**, 249 Fed.Appx. 450, 461 (6th Cir.), cert. denied, 552 U.S. 1310 (2008).  Plaintiff has not shown that the reason for his termination was false, much less that age discrimination was the real reason for his termination.  To the extent plaintiff's circumstantial evidence is even relevant to his non-RIF termination for cause, such evidence is quite weak and does not suggest the stated reason for plaintiff's termination had "no basis in fact" or was "insufficient to motivate the termination." Plaintiff's objections under the first and third prongs of **Manzer** are without merit.

Under the heading "actual motivation for termination" (the second prong of **Manzer**), plaintiff asserts a rambling six-page "objection" that it is difficult to follow (doc. no. 51 at 15-20).   For example, he complains that his employer didn't investigate his violations "enough," and illogically contends that this is evidence of "pretext" (**Id**. at 17).  The Magistrate Judge aptly explained that:

> "Although Plaintiff wishes that his employer had looked deeper into the reasons behind his violations of the company policies, he does not question the facts discovered during the course of Defendant's investigation. An employer's investigation need not be perfect in order to pass muster as reasonable and nondiscriminatory. This is not a case in which the Defendant inconsistently applied its policies; Plaintiff points to no evidence that any other employee sent internal emails outside of the company and retained his. . . position" (doc. no. 48 at 28).

Plaintiff attempt to downplay his violations by characterizing them as "innocuous" or "inconsequential." The Magistrate Judge appropriately rejected plaintiff's contention that his purportedly "innocuous" behavior should have been addressed with counseling, rather than termination (doc. no. 48 at 26).  In any event, plaintiff's

characterization of his own conduct and his subjective beliefs are insufficient to show that the reason for his termination was a pretext for age discrimination. Plaintiff merely speculates that age must have been a "determining factor" in his termination because "why would you treat somebody like this if that wasn't the factor?" (doc. no. 33 at 16, Green Dep. at 61, lines 15-24). Plaintiff's speculation provide no basis to withstand summary judgment. See, e.g., Preston v. Clayton Homes, Inc., 167 Fed.Appx. 488, 492 fn. 1 (6th Cir. 2006) (observing that plaintiff's subjective opinion "about the reasons for his termination are not sufficient to support an inference of discrimination"); Chappell v. GTE Products Corp., 803 F.2d 261, 268 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination.").

The Magistrate Judge discussed the evidence of record showing that SIR fired plaintiff for violating its policies and that SIR took these company policies regarding confidentiality quite seriously. For example, the Magistrate Judge aptly observed that SIR's litigation against a former employee (Chris Johnson) for misappropriation of confidential information "demonstrates the seriousness with which Defendant viewed the policies that it determined Plaintiff had violated" (doc. no. 48 at 24).[8] Plaintiff himself acknowledged he knew that Johnson's violations of policy were a "pretty big deal" at SIR (doc. no. 33 at 5, Green Dep. at 20, lines 1-4).

_____

[8]Although the Magistrate Judge indicated that Johnson was terminated (doc. no. 48 at 23), plaintiff points out that Johnson actually resigned (doc. no. 51 at 16). Regardless, this is not a "material" fact. The salient point, which the Magistrate Judge accurately made, is that SIR was sensitive about confidentiality of its proprietary information and pursued litigation against Johnson.

Plaintiff acknowledged that he knew was not allowed to send "any internal email to customers" (doc. no. 53-1, Green Dep. at 48, lines 12-14). Although plaintiff quibbles about a typographical error in the quotation of this testimony, namely, the defendant and Magistrate Judge's reference to "an" email instead of "any" email, the this minor discrepancy is inconsequential. Defendant points out that plaintiff's admission regarding <u>any</u> emails "more than amply demonstrates that Green knew he could not send any e-mail outside the Company, which is part of the basis for his discharge" (doc. no. 53 at 1). Contrary to plaintiff's contention, the context of the quoted testimony does <u>not</u> suggest otherwise.

Plaintiff also complains, without adequate explanation, that the Magistrate Judge "reviewed the evidence in isolation rather than as a whole" (doc. no. 51 at 19). He then rehashes all his arguments regarding the statistical evidence from the June 2008 restructuring and any new hiring in 2008 in an effort to show that the defendant "seized on this opportunity to terminate plaintiff" (<u>Id</u>.). Contrary to plaintiff's allegation, the Report and Recommendation reflects that the Magistrate Judge carefully reviewed the evidence as a whole and referred to a wide variety of evidence in her analysis, including her discussion of pretext (doc. no. 48 at 23-28). Plaintiff merely appears to take exception to the Magistrate Judge observation that, given that plaintiff had survived the restructuring, "the only reasonable conclusion is that defendant had no intention of firing plaintiff prior to defendant's discovery of plaintiff's policy violations on August 13, 2008) (<u>Id</u>. at 26). Plaintiff's arguments to the contrary are strained and based on faulty assumptions. For example, contrary

to plaintiff's argument (doc. no. 51 at 18), the Magistrate Judge did <u>not </u>assume that the employer knew about plaintiff's emails prior to August 13, 2008. The evidence consistently indicates that the employer first discovered plaintiff's violations of policy on August 13, 2008, the date of his termination for cause.

In conclusion, plaintiff's circumstantial evidence is insufficient to establish a prima facie case. Moreover, plaintiff has not shown that the employer's legitimate non-discriminatory reason for his termination (i.e. multiple violations of company policies) was merely a pretext for age discrimination. Plaintiff's objections to the Magistrate Judge's analysis of pretext are without merit.

## VI.  Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument.   The parties have extensively briefed the issues and have not  requested oral argument. The Court finds that the pleadings and exhibits are clear on their face and that oral argument is not warranted here. <u>Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs</u>, 975 F.2d 300, 301-02 (6th Cir. 1992); see also, e.g., <u>Schentur v. United States</u>, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (reiterating that "district courts may dispense with oral argument on motions for any number of sound judicial reasons" and finding that the district court acted within its authority).


Accordingly, the Court <u>OVERRULES</u> the plaintiff's objections (doc. no. 51); <u>ADOPTS</u> the Magistrate Judge's Report and Recommendation (doc. no. 48) and

incorporates it herein;  and **GRANTS** the defendant's "Motion for Summary Judgment" (doc. no. 45).

This case is **DISMISSED** with prejudice at plaintiff's cost and **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

          **s/Herman J. Weber**
          **Herman J. Weber, Senior Judge**
          **United States District Court**